**ASSOCIATION OF IMMIGRATION ATTORNEYS, et al., Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

No. 86 Civ. 3169 (RLC).

United States District Court,
S.D. New York.

July 17, 1987.

Peter Hirsch, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., New York City, for defendants; Chad Vignola, Asst. U.S. Atty., of counsel.

OPINION

ROBERT L. CARTER, District Judge.

On December 2, 1985, a notice of planned revision of form I-130, *Petition to Classify Status of Alien Relative for Issuance of Immigration Visa*, appeared in 50 Fed. Reg. 49,467. The notice stated that the proposed revision was designed to ease the public's use of the form, to improve its appearance and readability, to clarify and simplify instructions, to decrease the number of submissions returned for more complete or accurate information, and to enable the Immigration and Naturalization Service ("INS") to detect fraud more efficiently. The notice also stated that along with the new form I-130, color photographs of the petitioner and beneficiary and a completed form G-325A (biographical data) would be required.

On March 26, 1986, a notice appeared in 51 Fed.Reg. 10,450-51 stating that the Justice Department had submitted the new form to the Office of Management and Budget for approval. On May 16, 1986, the Office of Management and Budget ap-

proved use of the new form through May 31, 1989.

The new form requires a petitioner to indicate sex, marital status, and the dates that any prior marriages ended. It requires a beneficiary to indicate town or city of birth, sex, date and place of present marriage if applicable, social security number, dates any prior marriages ended, whether the beneficiary has ever been in the United States, and an "Arrival/Departure Record" number (items not required under old form I–130).

Plaintiff, Association of Immigration Attorneys ("the Association"), is a New York City-based unincorporated professional association consisting of some fifty attorneys personally engaged in the practice of immigration law. Complaint, ¶ 3. Plaintiffs Peter Hirsch, Jan Brown, Eunice Becker, Warren Lubin, Robert Belluscio, Peter Koenig, Jennifer Middleton and Harry De-Mell are joined in the action as individual plaintiffs who are attorneys engaged in the private practice of law and, except for De-Mell, primarily in the practice of immigration law.

Plaintiffs seek to prevent the use of the revised form on the ground that the revision constitutes rule making necessitating publication of notice in the Federal Register and a thirty-day period for comment as provided by the Administrative Procedure Act, 5 U.S.C. § 553(c), and the Paperwork Reduction Act of 1980, 44 U.S.C. § 3517.

The government seeks summary judgment. It argues that there are no material facts in dispute. It agrees with plaintiffs that the old form was revised without following the procedures required by the Administrative Procedures Act, 5 U.S.C. § 553, but it contends that statute is not applicable and argues that it has complied with the Paperwork Reduction Act of 1980. On these points there is no dispute as to what the government actually did. Thus, there are no disputed fact questions, rendering the case subject to resolution by summary judgment.

■ The basic issue to be determined is plaintiffs' standing to institute this action.

A party must establish a personal stake in the outcome of a controversy in order to invoke federal jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). To meet this yardstick, the party must show not only a "distinct and palpable injury," *id.,* but also a causal connection between the claimed injury and the defendant's conduct. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). The injury must be concrete, *United States v. SCRAP,* 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973), real and immediate, *California Bankers Association v. Shultz,* 416 U.S. 21, 68–69, 94 S.Ct. 1494, 1521, 39 L.Ed.2d 812 (1974), and particularized. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

It is clear that neither the plaintiff association nor the individual attorneys sue as petitioners or beneficiaries whose interests are adversely affected by the change in the form. As a result, the Association lacks standing to bring this action.

The Association cannot show injury to itself as an organization or to its individual members which it has standing to assist. *See, e.g., Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Neither the Association as such, nor its individual members has any personal or individual interest which is adversely affected by the form's revisions. There is nothing in the form adverse to the aims, purposes, objectives or activities of the Association, nor to the right of its members to associate together to pursue their common purposes. The individual plaintiffs fare no better. They simply have suffered no personal wrong warranting standing to pursue this litigation.

Plaintiffs assert an economic interest as professionals and as small business entities. They contend that the new form takes one hour to an hour and a half longer to complete than was the old form. Because of this burden, multiplied over hundreds of cases handled yearly, plaintiffs

contend that the individual plaintiffs will be required "to hire additional staff or employ existing staff for longer hours." Thus, plaintiffs contend the form change will cause them to suffer a real injury which falls within their economic zone of interest. In addition, they contend the new rules will cause substantial delays in processing petitions, which could have dire consequences for the alien. Plaintiffs' Memorandum of Law in Opposition at 4; Affidavit of Peter Koenig, Exh. J to Plaintiffs' Memorandum in Opposition.

The short answer to these allegations is that if the paperwork requires more time, plaintiffs will raise their fees to compensate for added time spent and additional staff employed to process the petitions. Thus, the plaintiffs themselves will suffer no injury resulting from this new form. The argument that there will be substantial delay in processing the petitions and consequent injury to petitioners is too vague and speculative to warrant serious consideration. That will have to await more experience with the form. Substantial delay would appear to be of no benefit to the government. Indeed, it is reasonable to conclude that if the revised form produces delay, the INS will seek to amend the form to eliminate that difficulty.

■ To meet the standing problem posed by the absence of their own personal loss, plaintiffs seek to invoke the doctrine of *jus tertii* on behalf of petitioners who otherwise could not assert their rights. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 959, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984). For that doctrine to be invoked, however, the litigant must satisfy the Article III case or controversy requisites by showing that he is injured in fact and can reasonably be expected to define the issues appropriately and prosecute them zealously on the third parties' behalf. *Id.* at 956, 104 S.Ct. at 2846. Although the general rule is that a holder of a right must himself assert it, *Holden v. Hardy*, 169 U.S. 366, 397, 18 S.Ct. 383, 390, 42 L.Ed. 780 (1898) (assertion of third parties' rights would come with "better grace and greater cogency" from

the third parties themselves), where the enjoyment of the third party right is inextricably bound up with the activity the litigant wishes to pursue, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or where the relationship between the litigant and the third party is such that the litigant is as effective a proponent of the right as the third party, *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), the doctrine of *jus tertii* applies. In addition, the presence of some impediment to a third party's asserting its own rights provides an additional reason for permitting the litigant to assert them on its behalf.

In *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the NAACP resisted a court order to produce the names of its members on the ground that such an order would threaten the First and Fourteenth Amendment rights of its members to anonymity. The organization was permitted to sue on behalf of its members because if the members themselves had been required to assert their own rights the claimed rights would have been lost the moment they were asserted.

In *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), doctors who sought to enjoin a Missouri statute denying medicaid benefits for abortions not "medically indicated" were found to have a sufficient interest adverse to that of the state to establish a case or controversy. *Id.* at 113, 96 S.Ct. at 2873. They were held to be as qualified to litigate the validity of state interference as the women who secured abortions. The Court concluded that a woman having an abortion might be deterred from suing to protect her own privacy, and the Court stressed the imminent mootness of the individual woman's claim since only a few months after the decision to have an abortion her right would be lost.

Where a third party is accorded standing to sue on another's behalf, however, the litigant still must establish that he himself has suffered a concrete injury. *Joseph H. Munson Co., supra*, 467 U.S. at 959, 104 S.Ct. at 2848. In *Forty–Second Street Co.*

*v. Koch,* 613 F.Supp. 1416 (S.D.N.Y.1985) (Motley, C.J.), a movie theater operator opposing condemnation of his property as part of an urban renewal project was allowed standing to contend that the purpose and effect of the planned condemnation were to discriminate against the minorities who constituted his clientele.

In *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Court found that the holder of a liquor license in Oklahoma had standing to challenge an Oklahoma statute permitting the sale of 3.2% beer to females of 18 years and older but prohibiting the sale to males under 21. Standing was found because the statute reduced the licensor's market and because adherence to the law prevented males 18–20 from obtaining beer directly, infringing the equal protection right asserted.

■ None of these considerations is at play here. There are no obstacles of privacy, or of imminent loss of the claimed right of the aliens which would impede assertion of rights by petitioners. There is nothing to prevent the aliens affected by the form from suing on their own behalf. Thus the circumstances warranting invocation of the *jus tertii* doctrine are not present here. The form neither sets up competition against plaintiffs, nor places restrictions on their activities.

■ Where First Amendment rights are at stake, prudential considerations require an even further relaxation of standing requirements. In that situation a challenge may be permitted by one whose own First Amendment rights may not be at risk because the existence of the statute may chill the rights of free expression of persons not before the court. *Broadrick v. Oklahoma,* 413 U.S. 601, 612–613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). However, there are no free speech considerations at stake here. The First Amendment, therefore, is not implicated and plaintiffs are required to meet the *jus tertii* yardsticks for non-First Amendment cases. *See Craig v. Boren, supra,* 429 U.S. at 193–94, 97 S.Ct. at 454–55.

Accordingly, we conclude that neither the Association nor attorney members of the Association have made a requisite showing of standing to enable them to invoke the jurisdiction of this court. The petitioners and beneficiaries which the form revisions concern do have a direct interest in the matters covered by the form, but they are not before the court. Moreover, even they would be hard-pressed to make a case or controversy out of this case, since the form's revisions are minimal, requiring in addition to the information previously sought a listing of sex, marital status, dates of any terminated marriages, social security number, employment for the past five years, and whether the beneficiary has previously been to the United States.

That the underlying basis for this litigation is to permit plaintiffs to comment to the INS on the new form and its impact is belied by the fact that the plaintiffs were given notice in December, 1986, of the new proposals and the form itself was not put into effect until May 16, 1987. During the intervening period plaintiffs had the opportunity to accomplish what they now say they wish to achieve through this litigation. However, from the time notice of the new form was made public in the Federal Register to its introduction on May 16, 1987, plaintiffs did nothing, except to file this lawsuit.

The government has raised other meritorious arguments in support of its motion for summary judgment. Since we feel the motion must be sustained because of plaintiffs' lack of standing, there is no need to discuss these other issues.

IT IS SO ORDERED.