**David D. LUTZ, Plaintiff,**

v.

**CITY OF YORK,**
**PENNSYLVANIA, Defendant.**

**Civ. A. No. 88–1100.**

United States District Court,
M.D. Pennsylvania.

Aug. 18, 1988.

William Anderson, Steve Zorbaugh, Daniel M. Fennick, Anderson, Converse & Fennick, P.C., York, Pa., for plaintiff.

Robert J. Katherman, Edward C. Roberts, York, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

Plaintiff, David D. Lutz, has filed a motion for a preliminary injunction, challenging the constitutionality of the defendant, City of York's, Cruising Ordinance. A hearing on the motion was held on August 5, 1988, the parties have submitted briefs and the motion is ready for disposition.

On April 19, 1988, the City of York enacted the Cruising Ordinance, prohibiting "unnecessary repetitive driving, also known ... as cruising." Ordinance No. 6, § 4. Cruising was defined in section 3(a) as follows:

> driving a motor vehicle on a street past a traffic control point, as designated by the York City Police Department, more than twice in any two (2) hour period, between the hours of 7:00 p.m. and 3:30 a.m. The passing of a designated control point a

third time under the aforesaid conditions shall constitute unnecessary repetitive driving and therefore a violation of this Ordinance.

Section 3(b) of the Ordinance defined the designated area, roughly a long narrow rectangular area of the City popularly known as the "Loop," "as Market Street from the 900 block west and eastward therefrom through and including the 1200 block east, and the 1200 block [of] east Philadelphia Street and westward through and including the 900 block west." The Ordinance excluded from its scope municipal and commercial vehicles and those used in public transportation. Section 5. It was enacted upon the following legislative findings:

It is hereby found that with consistency, on certain days and times, a threat to the public health, safety and welfare arises from the congestion created by repetitive unnecessary driving of motor vehicles on main thoroughfares within the City of York. The purpose of this Ordinance is to reduce the dangerous traffic congestion, as well as the excessive noise and pollution resulting from such unnecessary repetitive driving, and to ensure sufficient access for emergency vehicles to and through the designated city thoroughfares now hampered by this repetitive driving of motor vehicles.

Plaintiff claims the Ordinance violates the constitutional rights to travel and of association. He also claims that the Ordinance is overbroad. He seeks a preliminary injunction against its enforcement. To obtain the injunction, plaintiff must show:

(1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Professional Plan Examiners v. LeFante,* 750 F.2d 282, 288 (3d Cir.1984) (quoting *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982)).

■ In support of his claim that the Ordinance violates the constitutional right to travel, plaintiff cites, among other cases, *Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) and *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Defendant argues that these cases are factually distinguishable and involve administrative actions or statutes hindering the right to travel abroad or to move between the various states. Here, in contrast, plaintiff only seeks to vindicate his right to travel on city streets solely for his amusement.

We agree with defendant that plaintiff is not asserting the right to travel as it has been commonly understood in prior cases. In those actions travel has typically referred to migration. *See Carmouche v. Bethlehem Steel Corp.,* 450 F.Supp. 1361 (D.Nev.1978). Nevertheless, plaintiff has asserted a liberty interest which has been recognized by this court in the past. In *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242 (M.D.Pa.1975), *aff'd without opinion,* 535 F.2d 1245 (3d Cir.) (table), *cert. denied,* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976), plaintiff challenged a curfew ordinance for minors. In discussing the nature of the right asserted, the court stated:

The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are basic values "implicit in the concept of ordered liberty" protected by the due process clause of the fourteenth amendment. [citations omitted]. One may be on the streets even though he is there merely for exercise, recreation, walking, standing, talking, socializing, or any other purpose that does not interfere with other persons' rights.

. . . .

No right is more sacred, or is more carefully guarded, by the liberty assurance of the due process clause than the right of every citizen to the possession and control of his own person, free from restraint or interference by the state. The makers of our Constitution conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man. *Union Pacific Railway Company v. Botsford,* 1891, 141 U.S. 250, 251, 11 S.Ct. 1000 [1001], 35 L.Ed. 734; *Olmstead v. United States,* 1928, 277 U.S. 438, 478, 48 S.Ct. 564 [572], 72 L.Ed. 944 (Brandeis, J., dissenting). Uninhibited movement is essential to freedom. *Baker v. Bindner,* W.D.Ky.1967, 274 F.Supp. 658, 662; *see Aptheker v. Secretary of State,* 1964, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992.

*Id.* at 1254–55 (brackets added). *See generally Papachristou, supra.*

We recognize that defendant would distinguish pedestrians strolling and meeting on the sidewalk from persons operating motor vehicles on the streets but we reject this argument. Motor vehicles are a lawful means of locomotion and plaintiff has the right to drive himself where he pleases—to go where he wants to go for whatever reason—if he is otherwise obeying the law, including relevant traffic statutes and ordinances. Plaintiff has therefore asserted a valid liberty interest.

Plaintiff also claims that the ordinance violates the right of association. Plaintiff and another witness testified that people cruised, in part, to meet and socialize with others, but he has not specified what aspect of the constitutional right of association has been violated by the Ordinance. The Supreme Court has:

afforded constitutional protection to freedom of association in two distinct senses. First, the Court has held that the constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.

*Board of Directors of Rotary Int'l v. Rotary Club,* 481 U.S. 537, ——, 107 S.Ct. 1940, 1945, 95 L.Ed.2d 474, 483 (1987); *see also Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir.1988).

Plaintiff has not stated a valid claim based upon his right to maintain an intimate association. A random meeting with other cruisers, even those who could be considered friends, is not the type of association protected by the constitution. *See Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir.1988).

*Rode* also disposes of any "expressive association" claim, *see New York State Club Ass'n, Inc. v. City of New York,* —— U.S. ——, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988), that could be asserted. This second type of claim protects "associations formed for the purpose of engaging in activities protected by the first amendment, such as the exercise of speech, assembly and religion." *Rode,* 845 F.2d at 1204. Plaintiff did not present any evidence establishing that the brief associations formed when cruisers encountered each other on the street had as their purpose any activity protected by the first amendment. At best, the activity could be understood as socializing, but under *Rode* that is insufficient to assert the protection of the constitutional right of association. *Accord IDK, Inc. v. County of Clark,* 836 F.2d 1185, 1195 (9th Cir.1988) (escort services' claim of expressive association denied when they made "no claim that expression is a significant or necessary component of their activities.").

▮ Because plaintiff has only established a liberty interest in being able to drive freely about, we will examine his attack upon the Ordinance only to see whether the enactment is rationally related to a legitimate governmental objective. *See Bykofsky, supra. Cf. Baldwin v. Fish and Game Commission,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) (A higher hunting fee imposed upon nonresidents of Montana does not violate the privileges and immunities clause of the Constitution be-

cause, in part, hunting is recreational and not necessary to the well-being of the Nation or to the nonresidents' livelihood. Additionally, a statutory classification which does not intrude upon a fundamental right need not be drawn with precision to meet an equal protection challenge.). *Compare Memorial Hospital v. Maricopa County*, 415 U.S. 250, 262 and n. 21, 94 S.Ct. 1076, 1084 and n. 21, 39 L.Ed.2d 306, 317 and n. 21 (1974); *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (plurality opinion).

The rational relationship test is easily met in this case. The legislative findings indicate that the City wanted to prevent, in part, the threat to public safety created by the traffic congestion arising from cruising traffic. These findings were buttressed by the City's evidence at the hearing. Keith J. Ressler, a City police officer and shift supervisor for the 7:00 p.m. to 3:00 a.m. police shift, testified that loop traffic begins around 7:00 p.m. and that it is often backed up five blocks. Emergency calls are received from businesses located along the Loop, and on at least one occasion a police car has had to drive on the sidewalk to reach the location of the call. He described the traffic as bumper to bumper during the cruising period and that police vehicles cannot penetrate this jam, even when sirens are used. The officer also testified that cars would stop in the street so that the drivers may speak to pedestrians or the occupants of other cars. George E. Kroll, the City's fire chief, testified that the central fire station is located at 800 West Market Street. Traffic is often at a standstill immediately in front of the station with cars occupying all three lanes of travel, and he explained the urgency of getting fire equipment to the scene of a fire as quickly as possible.

The City of York has a legitimate interest in the "orderly flow of motorized traffic." *ACORN v. City of Phoenix*, 798 F.2d 1260, 1268 (9th Cir.1986). *See also Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed.2d 1049 (1941). We conclude that the Cruising Ordinance is a rational attempt to deal with that interest by controlling the passage of traffic through a certain area of town that, through experience, the City has learned is unusually congested during certain periods of time.

Plaintiff attacks the Ordinance because rush hour traffic is also congested but the City has not attempted to impose special limitations upon that traffic. Plaintiff argues that the situation could be dealt with differently by enforcing other types of traffic regulations such as the prohibition on double parking or on blocking traffic. He also suggests that police could take alternate routes to emergencies, even going on foot when traffic is backed up. These are arguments that go to the wisdom of the Ordinance and not its constitutionality. As such, we cannot rely upon them. "[I]t is, by now, absolutely clear that the Due Process Clause does not empower the judiciary 'to sit as a superlegislature to weigh the wisdom of legislation....'" *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91, 99 (1978) (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93, 98 (1963)) (brackets added).

We emphasize that plaintiff here is not arguing that the Cruising Ordinance has hindered the right of interstate travel or prevented him, and those associated with him, from using the streets to promulgate their position on matters subject to first amendment protection. Nor has he, in our view, asserted a valid claim based upon the right of "intrastate travel" as we understand that phrase, which at least encompasses the right to migrate freely within a state or some other similar right. If the first two claims were present in the instant case, we would apply a higher standard of scrutiny, the compelling state interest test. *See Board of Directors of Rotary Int'l, supra; Shapiro, supra.* We would possibly apply the same test to an intrastate travel right. *See Wellford v. Battaglia*, 485 F.2d 1151 (3d Cir.1973) (per curiam) (dealing with a durational residency requirement), *aff'g*, 343 F.Supp. 143 (D.Del. 1972). But, as noted, plaintiff seeks to vindicate only the right to cruise—to use the streets for the purposes of amusement

only—and while we recognize this as a liberty interest, we refuse to acknowledge it as a fundamental right. Accordingly, we are required to examine the Ordinance only to determine if it is rationally related to a legitimate governmental objective. As noted, we have concluded that it is.

Plaintiff has also argued that the Ordinance is overbroad. He presented the testimony of a City resident who lives on the Loop. She stated that, while on legitimate errands, she had occasion to pass the same point in the Loop three times within the proscribed two hour period. We must reject this argument. We recognize that overbreadth challenges may be brought by claimants whose own conduct was not constitutionally protected when the protected conduct of a third party may be sanctioned by the law. *See Rode, supra.* But this exception to the general standing requirement, "that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court," *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973), can only be invoked when the first amendment rights of the third party are threatened. *See New York State Club Ass'n, Inc., supra; Virginia v. American Booksellers Ass'n, Inc.,* —— U.S. ——, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Rode, supra; Trade Waste Management Ass'n, Inc. v. Hughey,* 780 F.2d 221 (3d Cir.1985); *Carlin Communications, Inc. v. FCC,* 837 F.2d 546 (2d Cir.1988); *Brecheisen v. Mondragon,* 833 F.2d 238 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1479, 99 L.Ed.2d 707 (1988). The testimony did not establish

that first amendment rights of the resident were threatened by the Ordinance. She did not assert that she was attempting to use the streets for associational or other first amendment purposes. She was simply looking for a parking spot or running errands. Her testimony established that she was possibly exercising a constitutionally protected interest in intrastate travel but this is a claim she can litigate on her own behalf. Accordingly, we will not entertain plaintiff's overbreadth challenge.[1] Consequently, because plaintiff has failed to show a likelihood of success on the merits, a requisite showing before a preliminary injunction can be entered, *see LeFante, supra,* the request for injunctive relief will be denied.[2]

We will issue an appropriate order.

---

1. We do not perceive any other exception to the general standing rule that would permit plaintiff to assert the witness's claim. For example, since the witness specifically denied being a cruiser at the time she violated the Ordinance, plaintiff could not rely upon the economic harm that could befall him if cruisers stopped that activity and, consequently, stopped buying plaintiffs' aftermarket auto equipment (apparently necessary for the well-equipped cruiser). Plaintiff's economic interest and the witness's interest in intrastate travel are not "mutually interdependent." *Craig v. Boren,* 429 U.S. 190, 195 n. 4, 97 S.Ct. 451, 456 n. 4, 50 L.Ed.2d 397,

405 n. 4 (1976); *Association of Immigration Attorneys v. INS,* 675 F.Supp. 781 (S.D.N.Y.1987).

2. In regard to the other factors, we will assume the presence of irreparable injury since the Ordinance curtails a constitutional right. However, the public interest and the interest of third parties do not favor the grant of an injunction. Rather, enforcement of the Ordinance would appear to serve both public safety and the safety of individuals by relieving congestion on the streets making up the Loop.