## Commonwealth v. Stahl

*Graham C. Showalter, assistant district attorney*, for the commonwealth.

*Lonnie C. Hill*, for defendant.

McCLURE, *P.J.*, August 11, 1989 — On December 5, 1987, a citation (no. 81875) was issued to defendant Ronald S. Stahl for failing to identify himself to a Pennsylvania Game Commission Officer in violation of 34 Pa.C.S. §904. Following a hearing before a district justice, defendant was found guilty and sentenced to pay a fine of $800. Defendant appealed to the court of common pleas.

At a de novo hearing held on July 18, 1988, defendant was again found guilty, and he subsequently filed a timely motion for arrest of judgment. Disposition of defendant's motion is the issue presently before this court.

## FACTS

Issuance of the citation arose out of the following circumstances. On the evening of December 5, 1987, at approximately 10:30 p.m., Pennsylvania Game Commission Officer Bernard J. Schmader received a report that shots had been fired in the vicinity of Duck and Moyer Roads, White Deer Township, Union County. Witnesses had observed a black pick-up truck in the vicinity. Approximately one-half hour later, Officer Schmader received a second report identifying Greg Stahl as one of the two alleged perpetrators. Officer Schmader, accompanied by two uniformed deputy officers, proceeded to the Stahl residence. The officers arrived at approximately 11 p.m., and failing to see the pick-up identified in the reports, parked nearby to see if it turned up. Their efforts were rewarded a few minutes later, when a beam of light caught their attention. They went to investigate and saw a black pick-up truck parked at the residence.

Greg Stahl and Neil Lilly came out of the house, and Officer Schmader began asking them about their activities earlier that evening. Stahl stated that he and Lilly had been driving around, having a few beers. They admitted driving the black pick-up but denied any involvement with hunting or killing deer.

During the interview, defendant came out of the house, stated that he was the owner of the property, and asked what was going on. Officer Schmader told him that they were investigating a possible game law violation and asked him to identify himself. Defendant refused.[1] Officer Schmader ex-

---

1. The testimony on this point differs. At the hearing held on July 18, 1988, defendant testified that, when asked to identify himself, he stated his name, but was unable to produce any form of written

plained that under the Game Code, he was required to identify himself, and repeated the question several times. Each time, defendant refused to state his name and stated that he had no identification on him. Defendant gave the officers permission to search the vehicles parked on the property, but refused to let them search his home without a warrant. He asked the officers to leave when they completed their search of the vehicles.

As a consequence of defendant's failure to identify himself, he was cited for violating section 904 of the Pennsylvania Game Code, which provides that "it is unlawful for any person to resist or interfere in any manner or to any degree or to refuse to produce identification" upon request of an officer performing any duty required under the code. 34 Pa.C.S. §904. Violation of section 904 is a first degree summary offense punishable by a maximum fine of $800. 34 Pa.C.S. §925(b)(4). Failure to pay the fine imposed is punishable by imprisonment for a period not to exceed 90 days. 34 Pa.C.S. §925(f).

## DISCUSSION

Defendant challenges his conviction on the grounds that section 904 violates the search-and-seizure provisions of the Fourth Amendment and that it is overbroad and unconstitutionally vague under the 14th Amendment to the U.S. Constitution.[2] We find that the mandatory identifi-

identification when requested to do so by Officer Schmader. The officer testified that defendant refused to either identify himself verbally or produce written identification.

2. Defendant did not raise, either in his motion for arrest of judgment or in his supporting brief, any alleged violation of the Pennsylvania Constitution. Therefore the court will not review the consistency of section 904 with comparable provisions of the Penn-

cation requirement of section 904 violates defendant's constitutional rights under the 14th Amendment[3] and reverse his conviction. For reasons discussed more fully below, we decline to reach the Fourth Amendment issues raised.

## 14th Amendment Issues

In *Kolender v. Lawson*, 461 U.S. 352, 75 L.Ed.2d 903, 103 S.Ct. 1855 (1983), the Supreme Court struck down a California statute similar to section 904 as violative of the due process clause of the 14th Amendment. The California statute [section 647(e)] authorized police officers to approach persons loitering or wandering the street and demand that they produce "credible and reliable identification"[4]

sylvania Constitution, such as Article I, section 8 ("Security from searches and seizures"), which reads:

"The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant[,]" and Article I, section 1 ("Inherent rights of mankind"), which reads:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

3. The constitutionality of a related provision, section 901(14) of the Game Code, is not at issue here. Section 901(14) authorizes Game Commission Officers investigating alleged violations, to "demand and secure identification from any person . . . " Defendant was not charged under section 901(14). Therefore, we are not in a position to rule upon its constitutionality, but would, however, comment that the reasons cited for declaring section 904 unconstitutional would apply with equal force to section 901(14).

4. "Credible and reliable" was interpreted by the California courts to mean identification that provides a reasonable assurance of its authenticity and includes information, such as a telephone number

and explain the reasons for their presence at that location. Inquiries were restricted to situations in which the officers had reason to suspect that the detainee was involved in illicit activity, the type of brief detention sanctioned by the Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).[5]

Edward Lawson, a California resident, filed a civil action seeking a declaratory judgment: (1) holding section 647(e) unconstitutional; (2) limiting its enforcement; and (3) awarding compensatory and punitive damages for the inconvenience he suffered at the hands of police officers. Lawson had been detained by the police under section 647(e) on approximately 15 separate occasions over a two-year period. Only one of the detentions resulted in a conviction.

Lawson argued that section 647(e) was unconstitutionally vague on its face in violation of the due process clause of the 14th Amendment. The Supreme Court agreed, concluding that section 647(e) failed to describe with sufficient particularity what a suspect must do to provide "credible and reliable" identification, thereby opening the door for arbitrary enforcement by prosecutors and police officers. *Kolender, supra,* 461 U.S. at 361, 75 L.Ed. 2d at 911. The court reviewed the constitutional parameters of the void-for-vagueness doctrine, which has two components. The first is actual notice: a penal statute must define the criminal offense with suffi-

---

or address, that allows the interrogating officer to initiate further contact. *Kolender, supra,* 461 U.S. at 357, 75 L.Ed. 2d at 908. (citations omitted)

5. If the detainee failed to comply with the officer's request, he could be arrested on a misdemeanor charge. *Kolender, supra,* 461 U.S. at 353, 357, 75 L.Ed. 2d at 906, 909, citing California Penal Code §647(e) (West 1970).

cient clarity to inform ordinary people of reasonable understanding the nature of the conduct prohibited. The second component, which overshadows the first, is adequate enforcement guidelines: penal statutes must establish precise standards delimiting what is and what is not a violation. Failing that, there is a risk of arbitrary enforcement; the door is open for a "standardless sweep" by law enforcement officials who are free to pursue their "personal predilections." *Kolender, supra,* 461 U.S. at 357, 75 L.Ed. 2d at 909; *Smith v. Goguen,* 415 U.S. 566, 574, 39 L.Ed. 2d 605, 613, 94 S.Ct. 1242 (1974); and *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 31 L.Ed. 2d 110, 115, 92 S.Ct. 839 (1972).

Section 647(e) did not withstand the court's scrutiny under the second component because it failed to set definitive compliance guidelines. It left that task to the discretion of the policeman on patrol, thereby opening the door to selective enforcement.

"Section 647(e) furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.' . . . and 'confers on police a virtually unrestrained power to arrest and charge persons with a violation.'" *Kolender,* 461 U.S. at 360, 75 L.Ed 2d at 911. (citations omitted)

*Kolender* is part of a line of cases in which the Supreme Court has declared unconstitutional laws that leave the criteria for enforcement up to the personal predilections of the arresting officer. In *City of Houston v. Hill,* 482 U.S. 451, 96 L.Ed.2d 398, 107 S.Ct. 2502 (1987), the court invalidated a Houston ordinance making it illegal for any person to "assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in

making an arrest." *City of Houston v. Hill, supra,* citing Houston Municipal Code §34-11(a) (1984). The court's ruling was based upon its concern that the vaguely defined parameters of the ordinance made it susceptible to selective enforcement:

*"[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them.* As the court observed over a century ago, '[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.' . . . *The present type of ordinance tends to be invoked only where there is no other valid basis for arresting an objectionable or suspicious person. The opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident." City of Houston v. Hill, supra,* 96 L.Ed. 2d at 414-5, quoting *Lewis v. City of New Orleans,* 415 U.S. 130, 39 L.Ed. 2d 214, 94 S.Ct. 970 (1974). (emphasis supplied)

In *Smith v. Goguen, supra,* the court struck down a Massachusetts statute imposing criminal sanctions on anyone who "publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the United States," stating:

"Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. . . . In *Gregory v. City of Chicago,* 394 U.S. 111, 120, 22 L.Ed. 2d 134, 89 S.Ct. 946 (1969), Mr. Justice Black in a concurring opinion, voiced a concern, which we share, against entrusting lawmaking 'to the moment-to-moment judgment of the policeman on his beat.' . . .

"Where inherently vague statutory language permits . . . selective law enforcement, there is a denial of due process." *Smith v. Goguen, supra,* 415 U.S. at 575-6 and 39 L.Ed.2d at 613. (citation omitted)

The Supreme Court struck down a Jacksonville vagrancy ordinance[6] on similar grounds in *Papachristou v. City of Jacksonville, supra,* 405 U.S. at 170, 31 L.Ed. 2d at 120, stating that it furnished "a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," quoting *Thornhill v. Alabama,* 310 U.S. 88, 97-8, 84 L.Ed. 1093, 60 S.Ct. 736 (1940). Finally, in *Coates v. City of Cincinnati,* 402 U.S. 611, 613, 29 L.Ed. 2d 214, 217, 91 S.Ct. 1686 (1971), the court declared a Cincinnati "public nuisance" ordinance unconstitutionally vague. The ordinance made it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks, street corners, vacant lots . . . and there conduct themselves in a manner annoying to persons passing by or

---

6. The ordinance read, in pertinent part:

"Rogues and vagabonds, or dissolute persons who go about begging, common gamblers . . . or common drunkards, common night walkers, thieves . . . traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places . . . persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are served, persons able to work but habitually living on the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses." *Papachristou v. City of Jacksonville, supra,* 405 U.S. at 156, 31 L.Ed. 2d at 112, quoting Jacksonville ordinance §26-57.

occupants of adjacent buildings," *Coates v. City of Cincinnati, supra,* quoting Code of Ordinances of the City of Cincinnati, §901-L6 (1956). The court stated:

"Conduct that annoys some people does not annoy others. Thus the ordinance is vague . . . in the sense that no standard of conduct is specified at all.

. . .

"The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct. It can do so through . . . ordinances directed with reasonable specificity toward the conduct to be prohibited. . . . It cannot constitutionally do so through . . . an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed." *Coates v. City of Cincinnati, supra,* 402 U.S. at 614, 29 L.Ed. 2d at 217-8. (citation omitted) See also, *Waters v. McGuriman,* 656 F.Supp. 923, 926 (E.D. Pa. 1987) (loitering ordinance struck down as unconstitutionally vague).

Turning to the case before us, under the analysis followed in *Kolender,* the critical issue is whether the statute establishes definitive compliance guidelines. Section 904 reads, in its entirety:

"When an officer is in the performance of any duty required by this title, it is unlawful for any person to resist or interfere in any manner or to any degree or *to refuse to produce identification upon request of the officer.* A violation of this section is a summary offense of the first degree." 34 Pa.C.S. §904. (emphasis supplied)

"Identification" is not defined anywhere in the code, nor has it been defined by the courts. Thus

what is required of someone asked to "produce identification" is an open-ended question left to the judgment of the interrogating officer. Compliance could consist of any of the following: (1) orally stating one's name; (2) producing written identification; (3) producing identification bearing a telephone number or address to allow further contact; (4) producing identification bearing a photograph to give the interrogating officers reasonable assurance that the proffered identification is genuine.[7] Determination of what constitutes adequate compliance lies solely with the interrogating officer. This vests the officer with unbridled discretion and opens the door to selective enforcement, a result expressly prohibited under *Kolender*.

Furthermore, unlike the California "stop and identify" statute in *Kolender,* section 904 does not restrict permissible inquiries to suspects or potential suspects. There is no limitation on whom a game commission officer can approach and ask to produce identification. Read literally, section 904 authorizes game commission officers to stop any citizen, anywhere, at any time, engaged in any activity, whether legal or illegal, demand identification and charge him with commission of a summary offense if compliance is not forthcoming. By failing to prescribe with clarity under what circumstances an individual may be stopped and asked to produce identification or what a detainee must do to comply, section 904 vests game commission officers with unbridled discretion to interrogate whomever they

---

7. Furthermore, to the extent that section 904 requires detainees to produce written identification, it imposes criminal sanctions for an activity not otherwise illegal or improper in any way. American citizens are not required to carry identification, unless they are engaged in a regulated activity such as operating a motor vehicle.

choose under any circumstances they choose and leaves to their sole discretion whether or not the compliance is adequate.

.To the extent that section 904 authorizes the detention of law-abiding citizens, whom officers have no reason to suspect of any wrongdoing, it violates constitutionally protected rights. An implicit right "to be let alone" to enjoy the amenities that life has to offer unchallenged by baseless inquiries from law enforcement officers has been expressly recognized by the Supreme Court and repeatedly reaffirmed by the district and federal appellate courts. This right has been cited as the reason for striking down laws establishing a curfew, prohibiting vagrancy, outlawing loitering, or otherwise making illegal conduct that, in and of itself, harms no one. In *Papachristou v. City of Jacksonville, supra,* the court invalidated a vagrancy ordinance, stating that it "makes criminal activities which by modern standards are normally innocent," e.g. strolling or wandering about at night, loafing, idling away the hours at places where alcoholic beverages are served.

"[T]hese activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights [but] . . . have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. . . . They have encouraged lives of high spirits rather than hushed, suffocating silence." *Papachristou v. City of Jacksonville, supra,* 405 U.S. at 163-4, 31 L.Ed. 2d at 116-7. See also, *Waters v. Barry,* 711 F.Supp. 1125 (D.D.C. 1989) (juvenile curfew struck down as violating Fifth Amendment rights of substantive due process) and *Waters v. McGuriman, supra,* (loitering ordinance declared unconstitutional un-

der the Fourth and 14th Amendments). Cf. *Lutz v. City of York,* 692 F.Supp. 457, 459 (M.D. Pa. 1988). (The court upheld an ordinance prohibiting "cruising" while acknowledging the existence of a constitutionally protected right to move about "free from restraint or interference by the state.")

Attempts by the government to curtail these freedoms are strictly circumscribed by the courts, particularly when the activities it seeks to limit or eliminate are not harmful in and of themselves.

"[W]hen government undertakes to limit these rights in some manner, it must act gingerly; *it must do so in a manner that is narrowly focused on the harm at hand, as well as sensitive to needless intrusions upon the constitutional interests of the innocent." Waters v. Barry, supra,* at 1135. (emphasis supplied)

Section 904 fails to satisfy this exacting criteria. It allows game officers to stop any person they deem "suspect," for any or no reason, and demand that he identify himself upon penalty of a fine or possible jail sentence.[8] It also makes it unlawful for any person *"to resist or interfere in any manner or to any degree"*[9] with a game officer in the performance

---

8. Violators of section 904 who neglect or refuse to pay the fine imposed face possible imprisonment for a period of up to 90 days. 34 Pa.C.S. §925.

9. Compare this broad language which can be interpreted to encompass virtually any conduct that the officer deems an interference with his duties, even a verbal challenge to an investigation or an arrest (see *City of Houston v. Hill, supra*) with the language of statutes making it unlawful for persons to resist arrest or interfere with a police officer or other governmental officer in the performance of his duties.

Section 5101 of Title 18 ("Obstructing administration of law or other governmental function") provides:

"A person commits a misdemeanor of the second degree if he *intentionally* obstructs, impairs or perverts the administration of law

of his duties. This broad authority allows officers to make arrests based on nothing more than a mere suspicion that the detainee has committed, or is about to commit, a crime, concepts alien to our system of justice.[10] See *Waters v. McGuriman, supra* at 928. Although the purpose behind section 904 serves a laudable goal, to assist game officers in catching game law violators, the commonwealth

---

or other governmental function by *force, violence, physical interference or obstacle,* breach of official duty, or any other unlawful act, expect that *this section does not apply to* flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, *or any other means of avoiding compliance with law without affirmative interference with governmental functions."*

Section 5104 of Title 18 ("Resisting arrest or other law enforcement") provides:

"A person commits a misdemeanor of the second degree if, *with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty,* the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance."

Section 5105 of Title 18 ("Hindering apprehension or prosecution") provides:

"A person commits an offense if, *with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime,* he:

"(1) harbors or conceals another;

"(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;

"(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

"(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with the law; or

"(5) volunteers false information to a law enforcement officer."

10. This also arguably infringes on rights guaranteed by the Fourth Amendment. See 339-40, *infra.*

cannot achieve that goal by abridging the constitutional rights of its citizens.

"Criminal statutes . . . that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill, supra.* (citations omitted) See *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940) (a law is void on its face if it "does not aim specifically at evils within the allowable area of [governmental] control, but . . . sweeps within its ambit other activities that constitute an exercise" of constitutional rights).

The enforcement of section 904 against defendant illustrates the problem. Defendant's involvement with the officers was wholly fortuitous. He was not suspected of any wrongdoing nor was he the subject of any investigation. In fact, defendant initiated contact with the officers; he approached the officers to ask why they were on his property. When he was advised that they were investigating possible game law violations by his brother, Greg Stahl, and an acquaintance, Neil Lilly, defendant conversed with the officers for several minutes and granted them permission to search the vehicles parked on the property. Defendant terminated the conversation when the officers asked permission to search his house; he declined and asked them to leave the premises.

During the conversation, the officers repeatedly asked defendant to state his name, but he refused.[11]

___

11. Testimony on this point differs. See note 1 *infra.* See also, *City of Houston v. Hill, supra,* 96 L.Ed. 2d at 407-8, quoting *Lewis v. City of New Orleans,* 415 U.S. 130, 39 L.Ed. 2d 214, 94 S.Ct. 970 (1974) (Powell, *J.,* concurring), in which the court quoted Justice Powell's observation that there is a "possibility of abuse" any time obtaining a

Their warning that his refusal was a violation of the Game Code and would subject him to a fine and possible criminal penalties did not sway him, and he was subsequently charged with violating section 904. Defendant's only infraction was refusing to state his name during a conversation with an officer regarding possible game law violations by other individuals. He was not charged with, nor even suspected of committing, any other offense. Imposing criminal sanctions on an individual who does nothing more than decline to state his name to an officer of the law[12] and who is not the subject of any investigation is a patent violation of the due process clause of the 14th Amendment that renders section 904 unconstitutional as applied to the facts of this case.

Because the broad language of the statute encompasses constitutionally protected rights, e.g. the right to be "left alone," to go about one's business free from unwarranted interference from law enforcement officers, it is unconstitutional on its face.[13]

## Fourth Amendment Issues

Defendant challenges section 904 on Fourth Amendment grounds. He contends that detaining

conviction depends upon resolving conflicting testimony as to "who said what" to whom.

12. See *Kolender, supra,* 461 U.S. at 360, 39 L.Ed. 2d at 911, quoting *Davis v. Mississippi,* 394 U.S. 721, 122 L.Ed. 2d 676, 89 S.Ct. 1394 (1969) (under the Fifth Amendment: "It is a settled principle that while the police have the right to request citizens to answer questions concerning unsolved crimes they have no right to compel them to answer.")

13. Our finding that section 904 is unconstitutional on its face obviates the need to consider whether it has any constitutional applications. See *Kolender, supra,* 461 U.S. at 358, 75 L.Ed. 2d at 910.

an individual to demand identification is an unconstitutional "seizure" under the Fourth Amendment absent probable cause or a "reasonable articulable suspicion" that the detainee is involved in criminal activity.[14] We decline to reach the Fourth Amendment issues that defendant raises for two reasons: (1) the record does not support a finding that defendant's Fourth Amendment rights have been implicated; and (2) since our finding that section 904 is unconstitutional on 14th Amendment grounds compels us to overturn defendant's conviction and declare section 904 void as applied and on its face, it would be improper for us to address other constitutional issues, the resolution of which is not necessary to disposition of this case. Constitutional issues should only be addressed if their resolution is necessary to disposition of the case. *Kolender,* 461 U.S. at 361, 75 L.Ed. 2d at 911.

In view of recent Supreme Court decisions demarcating the circumstances in which a defendant's Fourth Amendment rights are implicated, the record does not support a finding that defendant's Fourth Amendment protections were violated. *Michigan v. Chesternut,* 486 U.S. __, 100 L.Ed. 2d 565 (1988) and *Immigration and Naturalization Service v. Delgado,* 466 U.S. 210, 80 L.Ed. 2d 247, 104 S.Ct. 1758 (1984).

Fourth Amendment protections do not arise in every encounter with a law enforcement officer. The police are free to converse with whomever they choose, just like any other citizen, and the person they address has an equal right to disregard their

14. Section 904 does not place any limitations on an officer's right to detain a citizen and demand identification. No showing of probable cause or even a reasonable suspicion of wrongdoing is required.

inquiries and walk away.[15] *Commonwealth v. Ellis,* 379 Pa. Super. 337, 549 A.2d 1323 (1988). However, if the police exercise their authority to detain a citizen for questioning, that citizen's freedom is curtailed and he is entitled to the protection of the Fourth Amendment. The Supreme Court has established an objective standard for determining whether an individual was detained for questioning: Fourth Amendment rights are invoked if, considering all of the attendant circumstances, a reasonable person in defendant's position would not have believed that he was free to leave without responding to the questions posed. *United States v. Mendenhall,* 446 U.S. 544, 64 L.Ed. 2d 497, 100 S.Ct. 1870 (1980), reh'g. den., 448 U.S. 908, 65 L.Ed. 2d 1138, 100 S.Ct. 3051 (Stewart, *J.*).

Applying this test to the facts before us, we find that a reasonable person in defendant's position would have felt free to disregard the officers' inquiries and walk away. The officers did not display any force, threaten defendant, physically restrain him or

---

15. In *Commonwealth v. Ellis, supra,* the Pennsylvania Superior Court stated:

"Encounters with police may be classified as mere encounters, non-custodial detentions, custodial detentions and formal arrests. . . . The classification of the encounter determines the applicability and scope of constitutional protections. . . . A 'mere encounter' is one which does not involve a seizure of the person. *A seizure of person sufficient to trigger the protections of the Fourth Amendment occurs 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'* . . . A seizure occurs if the person is subjected to a stop and a period of detention during which he is subject to the control of the police and is not free to leave. . . . While a suspect may certainly walk away from a mere encounter with a police officer, every traffic stop and every *Terry* stop involves a stop and a period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him." (emphasis supplied; footnotes and citations omitted)

in any way seek to curtail his freedom. In fact, defendant, not the officers, initiated the interview. As initiator of the dialogue, defendant certainly had reason to believe that he could likewise terminate the conversation at his convenience and did so when the officers persisted in asking his name[16] and sought permission to search the house. Additionally, the interview took place on defendant's property. He knew that the officers did not have a warrant, and that he could order them off of the property. Taken together, these circumstances clearly indicate that a reasonable person in defendant's position would have felt free to terminate the interview and walk away.

Our holding is consistent with recent Supreme Court decisions delimiting the circumstances which implicate Fourth Amendment rights. In *Michigan v. Chesternut, supra,* the court held that defendant was not "seized" within the meaning of the Fourth Amendment when two officers patrolling in a marked police car drove alongside him as he ran down the sidewalk. The officers first spotted defendant standing on a street corner. When he caught sight of their police cruiser, he began to run, and the officers followed him around the corner and briefly accelerated to catch up with him. They drove alongside defendant for a short distance, but did not activate the siren, direct defendant to stop or other-

16. Fourth Amendment concerns were not at issue in *Kolender, supra,* since the California statute incorporated the stop-and-frisk criteria established by *Terry v. Ohio, supra,* thereby placing appropriate constraints on the conduct of the officers. No individual could be detained absent a "reasonable suspicion, based on articulable facts" that criminal activity was afoot.

The Supreme Court noted parenthetically that absent this limitation, the statute would have been subject to being stricken on Fourth Amendment grounds. *Kolender,* 461 U.S. at 356, 75 L.Ed. 2d at 908.

wise attempt to impede his progress. When the officers saw defendant drop several packets to the ground, one of them got out to retrieve the packets, and discovered that they contained what appeared to be illegal drugs. Defendant was arrested and taken to the police station, where a search of his clothing revealed more illegal drugs. Defendant sought to have the charges against him dismissed on the ground that the officers' driving alongside him as he ran down the sidewalk constituted and unconstitutional seizure of his person under the Fourth Amendment. The Supreme Court disagreed, holding that a reasonable man in defendant's position would not have believed that his liberty was curtailed when the police cruiser drove alongside him as he ran down the street.

In *United States v. Mendenhall, supra,* the Supreme Court found that the law officers' conduct did not constitute a seizure under the Fourth Amendment. Federal drug enforcement agents were patrolling the Chicago airport when they noticed defendant acting suspiciously. The agents approached defendant and asked to see her plane ticket and identification. She produced the items requested and after she briefly answered questions regarding her travel plans, the officers asked her to accompany them to an office for further questioning. She assented and, while there, consented to a search of her person. The search revealed packets of heroin concealed beneath her clothing. Defendant moved to suppress the heroin on the ground that her Fourth Amendment rights were violated when the agents detained her for questioning and had her accompany them to their office. That argument was dismissed by the Supreme Court, which held that under the circumstances a reasonable person in defendant's position would have felt at liberty to

refuse the agents' request and continue on her way.[17] See also, *Immigration and Naturalization Service v. Delgado, supra,* and *Florida v. Rover,* 460 U.S. 491, 497, 75 L.Ed. 2d 229, 236, 103 S.Ct. 1319 (1983) (plurality opinion; notes that mere approach by uniformed police officers does not constitute a seizure). Cf. *Brower v. County of Invo,* 489 U.S. __, 103 L.Ed. 2d 628, 635 (1989) (use of a police roadblock to stop the driver of a stolen vehicle constituted a seizure under the Fourth Amendment. "Violation of the Fourth Amendment requires an intentional acquisition of physical control . . . "")

Defendant relies upon *Brown v. Texas,* 443 U.S. 47, 50, 61 L.Ed. 2d 357, 361, 99 S.Ct. 2637 (1979) in which the Supreme Court invalidated a Texas "stop and identify" statute[18] on Fourth Amendment grounds. *Brown* is distinguishable on its facts. The defendant was stopped by police officers and detained without probable cause. When he refused to tell the officers his name or the reason for his presence in the area, he was arrested, taken into custody and transported to the police station for booking. Since defendant was taken into physical custody, there was no question that his Fourth Amendment rights had been implicated.

---

17. The Supreme Court noted that its ruling on this issue was not affected by the fact that defendant was not expressly told by the agents that she was free to leave and need not cooperate with them; informing defendant that he is free to leave is not a necessary prerequisite to voluntarily acceding to the officers' request. *United States v. Mendenhall,* 446 U.S. at 555, 75 L.Ed. 2d at 510.

18. The Texas statute provided:

"[A] person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information." *Brown v. Texas,* 443 U.S. at 50, 61 L.Ed. 2d at 361, citing Tex. Penal Code Ann., Title 8, §38.02(a) (1974).

Having found that defendant's Fourth Amendment protections were not implicated in the case sub judice, we do not consider the validity of section 904 under the Fourth Amendment to be an issue properly before us, and for that reason decline to rule on it. See, *Waters v. Barry, supra,* at 1121, 1123, 1138.

We do note, however, that if the issue were properly before the court, we would follow the holding in *Waters v. McGuriman, supra.* There, the plaintiff filed a 42 U.S.C. §1983 action challenging the constitutionality of a borough loitering ordinance under which he had been arrested and convicted for refusing to answer a police officer's questions.[19] The court entered summary judgment on the issue of liability in the plaintiff's favor, finding that the ordinance was blatantly unconstitutional under the Fourth Amendment in allowing the police to arrest and detain citizens absent probable cause or even a reasonable suspicion of any criminal conduct on their part. In support of its decision, the court reiterated the fundamental Fourth Amendment rights as set forth by the Supreme Court in *Terry v. Ohio, supra,* and other landmark decisions: "[P]olice may only seize and detain or arrest a person if there is probable cause to believe that he has committed a crime. . . . Where probable cause is lacking, we have expressly declined to allow significantly more intrusive detentions or searches on the *Terry [v. Ohio]* rationale, despite the assertion of compelling law enforcement interests. 'For all but those narrowly defined intrusions, the requisite "balancing" has been performed in centuries of precedent and is embodied

---

19. On appeal to Court of Common Pleas of Montgomery County, the charges were dismissed, and plaintiff's conviction was set aside.

342

in the principle that seizures are "reasonable" only if supported by probable cause.' . . . Even during a *Terry* encounter, 'the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.' " *Waters v. McGuriman, supra* at 928, quoting *Kolender, supra,* 461 U.S. at 363, 103 S.Ct. at 1861 (Brennan, *J.,* concurring). (other citations omitted)

For all of the foregoing reasons, we hold that 34 Pa.C.S. §904 is unconstitutional, as applied to defendant, and on its face under the 14th Amendment, and we will enter an order to that effect overturning defendant's conviction.

## ORDER

And now, August 11, 1989, upon consideration of defendant's post-trial motions and for the reasons set forth in the accompanying opinion, it is ordered that:

(1) Defendant's motion in arrest of judgment is granted;

(2) Defendant's conviction for violating section 904 of the Pennsylvania Game Code (34 Pa.C.S. §904) is reversed, the charges are dismissed and defendant is discharged; and

(3) Section 904 is declared unconstitutional, as applied to defendant, and on its face as a violation of the 14th Amendment of the U.S. Constitution.